**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MICHAEL GARRISON,

     *Plaintiff*,

v.

Defendant Equifax INFORMATION SERVICES,
LLC; and TRANSUNION;

     *Defendants*.

_____/

CASE NO. 10-CV-13990

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(Docs. 51, 53)

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that:

Defendant Trans Union's motion for summary judgment (Doc. 51) be **GRANTED** and

Defendant Trans Union be dismissed from the case; and

Defendant Equifax's motion for summary judgment (Doc. 53) be **DENIED IN PART** as

to Count I of Plaintiff's Complaint and be **GRANTED IN PART** as to Count II of Plaintiff's

complaint and as to the claim for damages for emotional distress and injunctive relief.

**II.     REPORT**

    **A.     Introduction**

Plaintiff's *pro se* two-count complaint alleges that Defendants Defendant Equifax

Information Services ("Defendant Equifax") and Defendant Trans Union, LLC ("Defendant Trans

Union") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681j(2) and 1681e(b),

respectively, by refusing to disclose Plaintiff's credit report to him (Count I) and by failing to

follow proper procedures to assure maximum accuracy of the information contained in the report

(Count II). (Doc. 1 at 4.) The case was referred to the undersigned magistrate judge for general

case management on October 14, 2010. (Doc. 5.) Having considered the above-entitled motions

and the briefs submitted by the parties, the Court is satisfied that it would not be assisted by oral

argument on the motions. Therefore, in accordance with local rules, the motions are submitted.

E.D. Mich. LR 7.1(f)(2).

### B.    Allegations in Complaint

Plaintiff's complaint alleges that on April 21, 2010, he "was denied a shell gas station credit

card based on false information maintained in the Plaintiff's credit report by Defendant Equifax"

and that on June 24, 2010, he was "denied/limited credit by AT&T telephone company due to his

credit report maintained by Defendant Equifax." (Compl., Doc. 1 ¶¶ 9, 10.)

Plaintiff further alleges that on July 26, 2010, he sent credit report request forms to

Defendants Defendant Equifax and Defendant Trans Union, as well as to a third consumer

reporting agency that is not a party to this suit. (*Id.* ¶ 1.) On July 30, 2010, Defendant Trans Union

responded to his request "by asking for proof of the Plaintiff's current address." (*Id.* ¶ 2.)

Plaintiff avers that on August 3, 2010, he "was denied credit for an auto loan from Chemical

Bank due to his credit report maintained by Defendant Trans Union, and on July 31, 2010, by

Chase Bank for a credit card." (*Id.* ¶ 4.)

Plaintiff states that on August 20, 2010, he "sent Defendant Equifax a letter by certified

mail "stating that Defendant Equifax did not disclose his credit report within 15 days as required

by the Fair Credit Reporting Act and asked that Defendant Equifax disclose it to him

immediately." (*Id.* ¶ 5.)

Plaintiff states that on August 23, 2010, he sent Defendant Trans Union a "copy of his state drivers license, copy of his tribal drivers license, a copy of his cable bill, and a copy of his state voters registration card." (*Id.* ¶ 2.)

On August 24, 2010, Defendant Equifax signed for and received Plaintiff's certified letter dated August 20, 2010. (*Id.* ¶ 6.) On August 26, 2010, Defendant Equifax responded "by asking for copies of documents proving Plaintiff's identification and address to which the Plaintiff complied on August 29, 2010, by sending a copy of his state drivers license, electric bill, and social security card." (*Id.* ¶ 7.) Plaintiff avers that Defendant Equifax "never responded to Plaintiff's letter, nor disclosed his credit report to him as required." (*Id.* ¶ 8.)

Plaintiff states that on September 2, 2010, Defendant Trans Union sent a letter to Plaintiff "stating that they would not disclose the Plaintiff's credit report to him because they allegedly could not locate it." (*Id.* ¶ 3.)

Plaintiff contends that Defendants violated the FCRA by "wilfully and or negligently refusing to disclose the Plaintiff's credit report to him" and "by not disclosing it to him within 15 days" as required under 15 U.S.C. §§ 1681g(a), 1681j(a)(1) and 1681j(2) (Count I). (*Id.* at 4.) Plaintiff also contends that Defendants violated the FCRA by "wilfully and or negligently failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in the Plaintiff's credit file" under 15 U.S.C. § 1681e(b) (Count II). (*Id.*) Plaintiff seeks $400,000 in damages, representing compensatory, punitive and exemplary damages against each Defendant and "injunctive relief ordering Defendants to disclose his credit reports to him . . . [and] to remove any and all false information contained in such reports[.]" (*Id.*)

### C.   Summary Judgment Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the

non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**D.   Discussion**

The purpose of the FCRA is to require that "consumer reporting agencies [such as Defendants] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

**1.   Count I - Plaintiff's Claims Under 15 U.S.C. § 1681g and j**

Plaintiff contends that Defendants violated the FCRA by "wilfully and or negligently refusing to disclose the Plaintiff's credit report to him" and "by not disclosing it to him within 15 days" as required by 15 U.S.C. §§ 1681g(a), 1681j(a)(1) and 1681j(2). (Doc. 1 at 4.)

Section 1681g(a) states the requirement that credit reporting agencies shall, upon request, disclose information in the consumer's file at the time of the request, with certain enumerated exceptions. Pursuant to section 1681j(a), "[a]ll consumer reporting agencies . . . shall make all disclosures pursuant to section 1681g of this title once during any 12-month period upon request of the consumer and without charge to the consumer." 15 U.S.C. § 1681j(a)(1)(A). Furthermore,

"[a] consumer reporting agency shall provide a consumer report under paragraph (1) not later than 15 days after the date on which the request is received under paragraph (1)." 15 U.S.C. § 1681j(a)(2).

Defendants contend that Plaintiff's claim under this section fails because Plaintiff did not provide proper identification, which is a prerequisite to a credit reporting agency's duty to disclose information. (Doc. 51 at 19-22; Doc. 53 at 24-29.) Indeed, section 1681h provides that a "consumer reporting agency shall require, as a condition of making the disclosures required under section 1681g of this title, that the consumer furnish proper identification." 15 U.S.C. § 1681h(a)(1). Although the statute does not define "proper identification," the regulations promulgated pursuant to the act provide the following guidance:

> (a) Consumer reporting agencies shall develop and implement reasonable requirements for what information consumers shall provide to constitute proof of identity . . . .
>
> (b) Examples of information that might constitute reasonable information requirements for proof of identity are provided for illustrative purposes only, as follows:
>
>> (1) Consumer file match: The identification information of the consumer including his or her full name (first, middle initial, last, suffix), any other or previously used names, current and/or recent full address (street number and name, apt. no., city, state, and zip code), full 9 digits of Social Security number, and/or date of birth.
>>
>> (2) Additional proof of identity: copies of government issued identification documents, utility bills, and/or other methods of authentication of a person's identity which may include, but would not be limited to, answering questions to which only the consumer might be expected to know the answer.

16 C.F.R. § 614.1.

    **a.**    **Defendant Trans Union**

As to Defendant Trans Union, Plaintiff acknowledges that on April 23, 2011, Defendant Trans Union disclosed Plaintiff's credit report to him; however, Plaintiff notes that this was 10 months after his request and 6 months after having filed the instant lawsuit. (Doc. 55 at 5.) Plaintiff reiterates that on August 23, 2010, he provided the information requested by Defendant Trans Union to verify his current address, i.e., a copy of his state driver's license, his tribal driver's license, his cable bill, and his state voter registration card. (*Id*. at 6-7.) Plaintiff cites his complaint, paragraph 2, in support of his contention. (*Id.*)

Defendant Trans Union replies that although Plaintiff sent his address verification, he failed to provide the additional information requested, i.e., completed disclosure request form, social security number and prior address or file number. (Doc. 56 at 2.) Defendant Trans Union further argues that based on this lack of information, it was unable to locate Plaintiff's file among its 200 million files, and properly denied disclosure until proper identification was provided by Plaintiff. (Doc. 56 at 3.)

Defendant Trans Union supports its motion with several pieces of evidence. Lynn Romanowski attests in an affidavit that Defendant Trans Union's database contains 961 files with the name "Garrison, Michael" and, of those 961, 38 are residents of the State of Michigan. (Doc. 51, Ex. B at 2.) Steven Newnom's affidavit adds that if the information provided by the consumer is inadequate to properly identify the specific consumer file, Defendant Trans Union's standard operating procedure is to seek additional and sufficient identifying information from the consumer prior to disclosure. (Doc. 51, Ex. C at 2-3.) If the consumer's current mailing address does not match the address contained in Defendant Trans Union's records, Defendant Trans Union requests that the consumer provide his unique nine-digit file number, name, current address, social security

number, date of birth and verification of the mailing address by providing two qualifying documents. (*Id.*)

In the instant case, since Plaintiff's address at 1485 Wirtz Road, Gladwin, Michigan ("Wirtz Road address") did not match the address on record with Defendant Trans Union, it sought the additional information indicated above in a letter dated July 30, 2010, addressed to Plaintiff at the Wirtz Road address, which included a disclosure request form listing the requisite verifying documents. (Doc. 51, Ex. C at 4; Doc. 51, Exs. C-1 and 2.) Plaintiff states that on August 23, 2010, he provided copies of his state driver's license, tribal driver's license, cable bill, and state voter registration card. (Doc. 1 at 2, ¶ 2; Doc. 51, Ex. C-3.) These documents would satisfy the proof of current address and date of birth portions of Defendant Trans Union's required verifying documents. However, Defendant Trans Union's disclosure form clearly requires additional documents showing proof of social security number, i.e., copy of social security card, military ID, Medicaid or Medicare card, or letter from the Social Security Administration. (Doc. 51, Ex. C-2 at 4.)

Accordingly, I suggest that Plaintiff's own version of the events confirms that he did not provide sufficient verifying information to Defendant Trans Union. Defendant then sent a letter to Plaintiff, dated September 2, 2010, stating it had been unable to locate the credit report and reiterating the requisite verifying documents needed from Plaintiff and included another disclosure request form. (Doc. 51, Ex. 4 at 3.) Prior to the filing of his complaint, Plaintiff did not send the requisite information to Defendant Trans Union. (Doc. 51 at 12.) Plaintiff does not dispute this fact. (Doc. 1; Doc. 55.) I therefore suggest that there is no genuine issue of material fact in dispute. The documents Defendant Trans Union required Plaintiff to furnish are expressly identified as reasonable requirements under the applicable regulation. *See* 16 C.F.R. § 614.1(1),(2). I therefore

8

suggest that the undisputed evidence reveals that Defendant Trans Union's requests were reasonable, that Plaintiff failed to comply with the reasonable requests for verifying documents, and that said failure relieved Defendant Trans Union of any statutory duty to disclose Plaintiff's credit report.

Accordingly, I recommend that Defendant Trans Union's motion for summary judgment be granted as to Count I of Plaintiff's Complaint.

### b.   Defendant Equifax

### i.   Substantive Analysis

As to Defendant Equifax, Plaintiff alleges that he initially requested his credit report from Defendant Equifax on July 26, 2010. (Doc. 1 ¶ 1.) Plaintiff states that on August 20, 2010, he "sent Defendant Equifax a letter by certified mail stating that Equifax did not disclose his credit report within 15 days as required by the Fair Credit Reporting Act and asked that Defendant Equifax disclose it to him immediately." (*Id*. ¶ 5.) On August 26, 2010, "Defendant Equifax responded by asking for copies of documents proving Plaintiff's identification and address to which the Plaintiff complied on August 29, 2010, by sending a copy of his state driver's license, electric bill, and social security card." (*Id*. ¶ 7.) Plaintiff avers that Defendant Equifax "never responded to Plaintiff's letter, nor disclosed his credit report to him as required." (*Id*. ¶ 8.)

Defendant Equifax does not dispute that the August 29, 2010, letter from Plaintiff exists and it acknowledges that it received a copy of the letter from Plaintiff during discovery and attached it as an exhibit to its motion. (Doc. 51 at Ex. A-7.) Defendant Equifax instead contends that it did not actually receive Plaintiff's August 29, 2010, letter through the mail and that, since the letter was not certified (as the August 20, 2010, letter was), "no reasonable juror could find that Defendant Equifax received the letter." (Doc. 53 at 26.) Defendant Equifax proffers a Declaration

of Vicki Banks in support of its motion. (Doc. 53 at Ex. B.) Ms. Banks declares that Defendant Equifax has no record of receiving Plaintiff's August 29, 2010, letter or it would have provided Plaintiff with the disclosure requested. (Doc. 51, Ex. B ¶ 30.) Ms. Banks notes that Defendant Equifax did provide Plaintiff with a copy of his credit file six months later on or about February 28, 2011. (*Id.* ¶ 30.)

Whether Defendant Equifax received Plaintiff's August 29, 2010, letter is clearly material to this claim because, if received, it would have triggered Defendant Equifax's duty to disclose. Proof of this fact is difficult because it involves proving a negative, i.e. lack of receipt. Defendant would have its declaration that it did not receive the letter suffice to prove that it did not receive the letter, thereby entitling it to summary judgment. Defendant adds that had Plaintiff mailed the August 29, 2010, letter with its accompanying documents via certified mail, there would be proof that Defendant Equifax received the letter. However, there is no requirement under the FCRA that consumers send their requests via certified or registered mail. Therefore, we are left with competing declarations – one averring that the letter was properly mailed and the other stating that the letter was not received. Although Defendant Equifax seeks to have this issue resolved in its favor on summary judgment, such a ruling would run counter to the long-held common law presumption that a properly addressed letter placed in the hands of the postal service "creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932).[1]

---

[1]The presumption also arises under Michigan law. *See Goodyear Tire & Rubber Co. v. Roseville*, 468 Mich. 947, 664 N.W.2d 751 (2003) ("a presumption arises that a letter with a proper address and postage will, when placed in the mail, be delivered by the postal service"); *accord Good v. Detroit Auto Inter-Ins. Exch.*, 67 Mich. App. 270, 274, 241 N.W.2d 71 (1976); *Stacey v. Sankovich*, 19 Mich. App. 688, 694, 173 N.W.2d 225 (1969).

The Sixth Circuit, however, has held that "[t]estimony of non-receipt, standing alone, would be sufficient to rebut the presumption of receipt[.]" *In Re Yoder Company*, 758 F.2d 1114, 1118 (6th Cir. 1985).[2] The Sixth Circuit is in the minority on this issue.[3] The *Yoder* court went on to explain that "a presumption [] has no probative effect once rebutted," and thus, the court could not rely solely on the presumption in finding that receipt had occurred. *Yoder*, 758 F.2d at 1120. In other words, when the presumption is rebutted, the presumption itself loses its effect, but that does not mean that the opposite conclusion is proven, as Defendant Equifax would have it. Instead, "testimony of non-receipt is sufficient to rebut the presumption of receipt, thus creating an issue of fact as to whether or not the letters were mailed." *Wielicki v. HMC Group*, No. 1:09-CV-15, 2009 WL 2496642, at *4 (N. D. Ohio Aug. 13, 2009) (denying summary judgment where the defendant denied receiving the plaintiff's letters under the FDCPA).[4]

I therefore suggest that a genuine issue of material fact exists as to whether Defendant Equifax received the letter from Plaintiff that, if received, would have given rise to a duty to disclose Plaintiff's credit report to him under § 1681g, h, and j. I therefore suggest that summary judgment be denied as to Count I against Defendant Equifax.

### ii. Damages

---

[2]Michigan also follows the Sixth Circuit view that the "presumption can be rebutted with evidence that the letter was not received." *Goodyear*, 468 Mich. at 947.

[3]*See In re Bennett*, 135 B.R. 72, 76 n.1 (S.D. Ohio 1992) (citing other circuits and noting criticism of the *Yoder* decision, namely, that if the presumption of receipt could be defeated by a simple affidavit to the contrary, the rule would "become unraveled"). *Accord, In re Chess*, 268 B.R. 150, 156 (W.D. Tenn. 2001) (citing other circuits' views). I note that bankruptcy decisions most often address this question because the bankruptcy rules allow service of process to be considered complete upon first class mailing. Fed. R. Bank. R. P. 7004(b), 9006(e). *Id.*

[4]Michigan also follows the rule that, where evidence rebutting the presumption is presented, "a question of fact arises regarding whether the letter was received." *Goodyear*, 468 Mich. at 947.

Defendant Equifax alternatively argues that Plaintiff's Count I claim for failure to disclose his credit report to him must fail because he cannot establish any actual damages as a result of the alleged § 1681g violation nor can he show that Defendant Equifax violated § 1681g wilfully such that he would be entitled to statutory damages. (Doc. 53 at 26-30.)

"If the noncompliance is willful, a consumer reporting agency is liable for any actual damages, or in the absence of actual damages for statutory damages," "punitive damages, costs, and attorney's fees." *Elsady v. Rapid Global Bus. Solutions, Inc.*, No. 09-11659, 2010 WL 742852, at *4 (E.D. Mich. Feb. 26, 2010) (citing *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1168 (D. Kan. 2008)); 15 U.S.C. §§ 1681n(a)(1)(A)-(C).[5] If only negligent noncompliance is established, a plaintiff may recover only actual damages sustained as a result of the noncompliance and no statutory damages are available. *Id.*; 15 U.S.C. § 1681o(a)(1). Accordingly, proof of actual damages is an essential element of a negligence claim but is not required for willful violations. *Beaudry v. Telecheck Services, Inc.*, 579 F.3d 702, 705-06 (6th Cir. 2009).

I suggest that Defendant Equifax's argument regarding the necessity of Plaintiff proving actual damages depends on resolution of the factual issue of whether Defendant Equifax received Plaintiff's verifying documents attached to his letter of August 29, 2010. If a factfinder concludes that Defendant Equifax did not receive Plaintiff's letter and requisite documentation, then Defendant Equifax had no duty to disclose and there would be no violation of sections 1681g, h or j. However, if a factfinder were to conclude that Defendant Equifax did receive the letter and verifying documentation, then the factfinder would be called upon to determine whether Defendant

---

[5]Three "guideposts" courts should consider when determining whether punitive damages are appropriate are: "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).

Equifax's failure to disclose was wilful or negligent. The answer to that question then determines whether Plaintiff must show actual damages (based on a negligent violation) or may rely on statutory damages (based on a wilful violation).[6]

I therefore suggest that since the answer to these questions is premised on the finding of whether Defendant Equifax received Plaintiff's letter and verifying documentation, the answer cannot be ascertained before the threshold question of receipt of the letter is determined by a factfinder. As a result, I suggest that Defendant Equifax's motion for summary judgment as to Count I should be denied on this ground as well.

Defendant Equifax also contends that Plaintiff is not entitled to injunctive relief because such relief is not available under the FCRA and that Plaintiff is not entitled to damages for emotional distress because the first mention of emotional distress was made in Plaintiff's responsive brief. (Doc. 53 at 18-24.)

Although Defendant Equifax contends that Plaintiff cannot now include damages for emotional distress in his claim for compensatory or actual damages, "[a]ctual damages for a FCRA violation may include humiliation and mental distress." *Bach v. First Union Nat'l Bank*, 149 Fed. App'x 354, 361 (6th Cir. 2005). "An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Id.* (finding

---

[6]As to actual damages, in response to Defendant Equifax's interrogatories and requests for production of documents, Plaintiff supplied Defendant Equifax with a copy of a letter dated October 21, 2010, from MetaBank to Plaintiff regarding a "Fingerhut Credit Account" application. (Doc. 53 at Ex. A-10.) The letter indicates that "[i]f we obtained information from a credit reporting agency as part of our consideration of your application, its name, address and toll-free number are shown below." (*Id.*) Defendant Equifax is the only credit reporting agency indicated at the bottom of the letter. (*Id.*) A similar letter dated November 4, 2010, from Chase Bank regarding a MasterCard application indicated that credit was denied "based in whole or in part on information obtained in a report from the consumer reporting agency listed below," and Defendant Equifax was the only reporting agency listed. (Doc. 53 at Ex. A-11.) A letter dated August 19, 2011, from Alltel to Plaintiff required a $1,000 security deposit due to information from Defendant Equifax that "influenced our decision." (Doc. 53 at Ex. A-12.)

sufficient evidence to support jury verdict where, because of a recent stroke, the plaintiff was "particularly vulnerable" to the defendant's actions and where she felt desperate, ashamed, embarrassed and mad); *compare Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001) (requiring the plaintiff to provide corroborating testimony or medical or psychological evidence to support award for emotional distress damages) *with Cortez v. Trans Union, LLC,* 617 F.3d 688, 720 (3d Cir. 2010) (refusing to adopt Fifth Circuit's holding requiring corroborating testimony or medical or psychological evidence because "[s]uch corroboration goes only to the weight of evidence of injury, not the existence of it").[7]

I suggest that in the instant case, Plaintiff's passing and conclusory reference to his "emotional distress and humiliation" in his responsive brief is insufficient to withstand summary judgment. I therefore suggest that any claim for emotional distress damages should not be allowed to proceed.

As to injunctive relief, the Sixth Circuit has explicitly declined to address the question:

> Adding to our reluctance to resolve the issue at this juncture is the reality that the answer to the question is far from self-evident. In *Washington*, the one court of appeals case to address the issue, the Fifth Circuit held that FCRA's grant to the FTC the power to obtain injunctive relief, *see* 15 U.S.C. § 1681s(a)(1); *id.* § 45(a), creates a negative inference that FCRA's private right of action, which has no express provision for injunction actions, does not allow individuals to obtain injunctive relief. 199 F.3d at 268. *Washington* may be right, and the district court thus may have been right to rely on it. But the answer is not free from doubt. *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979), points out that a district court should start with the assumption that, in actions over which it has jurisdiction, it has authority to issue injunctive relief. In the absence of "the clearest command to the contrary from Congress," the plaintiff may seek injunctive relief.

_____

[7]Courts have also grappled with the issue of whether a plaintiff must also satisfy the standards of the state tort of emotional distress claims in order to recover emotional distress damages under the FCRA. Although the Sixth Circuit has not yet ruled on the issue, numerous district courts have held that actual damages for emotional distress can be proved independently of state law requirements. *See Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968, 971-72 (N.D. Ohio 2008) (collecting cases).

14

*Beaudry*, 579 F.3d at 709. District courts in the Eastern District of Michigan, however, appear to favor the Fifth Circuit's approach and have uniformly held that injunctive relief is not available under the FCRA. *See Sloan v. Trans Union, LLC*, No. 10-10356, 2010 WL 2805278, at *3 (E.D. Mich. June 23, 2010); *Kaplan v. Experian, Inc.*, No. 09-10047, 2010 WL 2163824, at *4 (E.D. Mich. May 26, 2010); *Khali v. Trans Union, LLC*, No. 08-10303, 2009 WL 804165, at *1-2 (E.D. Mich. March 25, 2009). I thus suggest that the district courts should be followed and that Plaintiff's claim for injunctive relief should not be allowed to proceed.

### 2.    Count II - Plaintiff's Claim Under 15 U.S.C. § 1681e(b)

The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Plaintiff contends that Defendants violated the FCRA by "wilfully and or negligently failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in the Plaintiff's credit file." (Doc. 1 at 4 (Count II).)

> [A] consumer reporting agency receiving a facially credible report from a source which it believes to be reputable is not liable merely because the report contains inaccurate information. However, a consumer reporting agency is not automatically shielded from liability if it accurately reports the information that it receives.

*Elsady*, 2010 WL 742852, at *4 (citing *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982)). There is no strict liability under the statute; instead, liability requires a finding that the agency failed to follow reasonable procedures to assure "maximum possible accuracy" of the information it reports about a consumer. *Bryant*, 689 F.2d at 78. The "reasonableness of a credit reporting agency's procedure is 'normally one for trial unless the reasonableness or unreasonableness of the procedure is beyond question.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)

(quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004)); *Bryant v. TRW, Inc.,* 487 F. Supp. 1234, 1242 (E.D. Mich. 1980), *aff'd* 689 F.2d 72 (6th Cir. 1982).

"A consumer asserting claims under §§ 1681i(a) or 1681e(b) against a credit reporting agency bears the burden of proving that the agency's credit report was a causal factor in the denial of his credit application." *Jackson v. Equifax Info. Services, LLC*, 167 Fed. App'x 144, 146 (11th Cir. 2006) (affirming grant of summary judgment where the plaintiff failed to produce any evidence indicating he was damaged as a result of an allegedly inaccurate report).

The elements of a claim for negligent violation of § 1681e(b) are: (1) the defendant reported inaccurate information about the plaintiff; (2) the defendant negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury. *Nelski v. Trans Union, LLC,* 86 Fed. App'x 840, 844 (6th Cir. 2004). "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001). "A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Poore v. Sterling Testing Systems, Inc.,* 410 F. Supp. 2d 557, 570 (E.D. Ky. 2006) (citing *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

A willful violation includes not only intentional violations but also violations committed with reckless disregard of a requirement of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). Recklessness is measured by "an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68. "[A] company subject to the FCRA does not act in reckless

16

disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but also shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

a.     **Defendant Trans Union**

Defendant Trans Union contends that it cannot be held liable since it followed reasonable procedures and had no notice that any furnisher of credit information was unreliable. (Doc. 51 at 22-26.) I note that on May 2, 2011, after the complaint in this matter was filed and after Defendant Trans Union provided Plaintiff with his credit report, Plaintiff sent Defendant Trans Union a formal dispute alleging several errors in the credit report he received. (Doc. 51 at Ex. C-5.) Defendant Trans Union investigated the alleged errors and found that "three of the disputed accounts were removed by the furnishers, one of the disputed accounts was removed per Trans Union's standard operating procedures, two of the disputed accounts were updated at the furnisher's requests (disputed information was verified) and one account was verified as accurate by the furnisher." (Doc. 51 at 25.) Defendant Trans Union then reported this updated information to Plaintiff on June 3, 2011. (Doc. 54 at 10.)

Defendant Trans Union proffers the affidavit of William Stockdale, Vice President of Data Acquisition Services, who attested that Defendant Trans Union has implemented varied procedures and systems to ensure on an ongoing basis that its furnishers of credit information are providing accurate information, including:

A.     Initial site inspections of Furnishers when entering into a contractual relationship with them;

B.     Initial reviews of due diligence investigation information to make sure that a Furnisher is a credit-worthy financial institution;

17

C.     Distribution of relevant manuals to Furnishers or ensuring that they have access to such manuals;

D.     Training for Furnishers;

E.     Audits of Furnisher data before and after they are permitted to transmit information;

G.     Initial and thereafter monthly and yearly monitoring and accuracy checks of the information Furnishers provide to make sure that the data provided is accurate;

H.     When Trans Union's procedures indicate a Furnisher is <u>unreliable</u>, the Furnisher's information is suppressed and removed from the credit reports until the information is corrected.

(Doc. 51, Ex. A at 3-4 (emphasis in original).)

As indicated earlier, a "consumer reporting agency receiving a facially credible report from a source which it believes to be reputable is not liable merely because the report contains inaccurate information. However, a consumer reporting agency is not automatically shielded from liability if it accurately reports the information it receives." *Elsady, supra.* Defendant Trans Union has submitted evidence that it follows reasonable procedures to assure the accuracy of the information provided by its furnishers. (Doc. 51, Ex. A at 3-4.) However, there is also evidence that out of the seven disputed items, six of them were not verified after investigation. (Doc. 51 at 25.) Therefore, there is some evidence that Defendant Trans Union's procedures were not effective. The question presented is whether Defendant Trans Union's "shield" can be pierced under such circumstances. I suggest that it cannot. In *Bryant*, the Sixth Circuit found that the defendant could not be shielded by its procedures where the defendant was aware of the plaintiff's troubled history with the furnisher and where the defendant and the plaintiff had met and the plaintiff had complained about three or four tentative reports furnished; yet, the defendant's only

18

efforts to assure accuracy were to call the furnishers and reconfirm what turned out to be inaccurate information. *Bryant*, 689 F.2d at 78-79.

In this case, Plaintiff has not alleged any facts or submitted any evidence like that relied upon in *Bryant*. There are no allegations that the instant Plaintiff had any troubled history with any of the furnishers Defendant Trans Union relied upon nor is there any evidence that any such history was communicated to Defendant Trans Union. Instead, the evidence shows that once alerted to a dispute, Defendant Trans Union quickly resolved the issues and corrected the information. I suggest that under these circumstances, Defendant Trans Union's reasonable procedures should be a shield from liability. I therefore suggest that Defendant Trans Union is entitled to summary judgment on this ground alone. *See Davis v. Equifax Info. Services, LLC*, 346 F. Supp. 2d 1164, 1173 (N.D. Ala. 2004) (granting summary judgment under § 1681e(b) and distinguishing *Bryant, supra*, where the defendant advised the plaintiff's creditors of the plaintiff's complaints and requested reinvestigation each time the plaintiff raised a dispute).

### b.      Defendant Equifax

Defendant Equifax contends that it cannot be liable under § 1681e(b) because Plaintiff cannot establish: that his credit report contained inaccurate information; that Defendant Equifax's procedures were unreasonable; that Defendant Equifax acted willfully; that information was ever disclosed to any third parties; or that Plaintiff incurred actual damages. (Doc. 53 at 15-21, 22-24.) Finally, Defendant Equifax argues that Plaintiff's request for injunctive damages should be dismissed since consumers are not entitled to injunctive relief under the FCRA. (*Id*. at 21-22.)

Plaintiff responds that the reasonableness of Defendant Equifax's procedures is a question of fact for the jury, that the inaccuracies have been established by the errors corrected by Defendant Trans Union, that the "Discover Financial Services account was subsequently

determined to be inaccurate by the creditor themselves[,]" and that Defendant Equifax has failed to comply with discovery requests that could prove the "content of the consumer reports the creditor received." (Doc. 54 at 5-8.)

Defendant Equifax replies by contending that Plaintiff cannot establish that it acted willfully or that he suffered any actual damages, nor should Plaintiff be permitted to pursue his newly raised claim for emotional distress damages, and even if he could, his claim for emotional distress damage fails because he has proffered only conclusory statements of distress. (Doc. 56.)

As to the reasonableness of its policies, Defendant Equifax proffers the declaration of Vicki Banks, Senior Consumer Research Analyst, wherein she states that:

4. Equifax maintains policies and procedures that are designed to assure maximum possible accuracy of the credit files that it maintains.

5. Equifax accepts credit information only from those sources of information, referred to as 'data furnishers,' that Equifax determines to be reasonably reliable based upon a source's reputation in the community or Equifax's longstanding business relationships with it.

6. When Equifax receives a request from a company to become a data furnisher and user of Equifax's credit information, Equifax conducts an extensive investigation to ensure that the company is reliable.

7. Each company must complete a detailed application and sign a subscriber agreement, which requires the company to certify that it will obtain consumer reports only in accordance with permissible purposes under the FCRA, and that it will otherwise comply with all FCRA requirements, including the requirement that it investigate consumer disputes.

8. Upon receipt of an application, subscriber agreement, and valid business license, Equifax's new-accounts department conducts an investigation of the company, which may include an onsite visit, to determine the company's legitimacy and reliability.

9. Subscribers who provide consumer information to Equifax are required to put data regarding consumers into standard electronic format before sending it to Equifax.

10. Information providers execute a contract with Equifax providing, among other things, that the providers will supply only accurate, up-to-date information.

11. Upon receipt of data from a furnisher, Equifax conducts a series of computerized quality checks before adding the data to its consumer database. These checks are designed to determine whether the data is in the proper format and whether the data as a whole deviates from expected norms (based on past experience with the particular source). For example, if a particular source typically reports that approximately 10 percent of its customer's accounts are past due, but the data indicates that 20 percent of the accounts are past due, Equifax will conduct further checks to determine the data's reliability, which may include returning the data to the information furnisher for review.

(Doc. 53, Ex. B at 1-2.)

Therefore, Defendant Equifax has submitted evidence that it follows reasonable procedures to assure the accuracy of the information provided by its furnishers. (Doc. 51, Ex. A at 3-4.) However, Plaintiff contends that the "Discover Financial Services account was subsequently determined to be inaccurate by the creditor themselves[.]" (Doc. 54 at 7; Doc. 53, Ex. A-2 at 2.) In addition, Plaintiff responded to discovery alleging that an IC Systems, Inc., account and a Department of Education/NELNET account were also inaccurately reported. (Doc. 53, Ex. A at 2.) As support for his contention, Plaintiff relies on Defendant Trans Union's letter to him dated June 3, 2011, indicating that the I.C. Systems account information was deleted, and that the Department of Education/NELNET account was changed, although the Discover account was verified. (Doc. 51 at 25.) Therefore, there is some evidence that Defendant Equifax's procedures were not effective in completely preventing inaccuracies.

As stated above with respect to Defendant Trans Union, the question presented is whether Defendant Equifax's "shield" can be pierced under such circumstances. For the same reasons as stated above I suggest that it cannot. Plaintiff has not alleged any facts or submitted any evidence

21

like that relied upon in *Bryant*. There are no allegations that the instant Plaintiff had any troubled history with any of the furnishers Defendant Equifax relied upon nor is there any evidence that any such history was communicated to Defendant Equifax. I therefore suggest that under these circumstances, Defendant Equifax's reasonable procedures should be a shield from liability. I therefore suggest that Defendant Equifax is entitled to summary judgment.

### E.      Conclusion

For the reasons stated above, I recommend that Defendant Trans Union's motion for summary judgment be granted and that Defendant Trans Union be dismissed from the case. I further recommend that Defendant Equifax's motion for summary judgment be denied in part as to Count I of Plaintiff's Complaint and be granted in part as to Count II of Plaintiff's complaint, and as to damages for emotional distress and injunctive relief.

## III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties

are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this report and recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.*, 454 F.3d at 596-97.


<u>s/ Charles E Binder</u>
CHARLES E. BINDER

Dated: February 13, 2012        United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and on the following non-ECF participant via the United States Postal Service: Michael Garrison, P.O. Box 54, Gladwin, MI 48624.

Date:  February 13, 2012                By    s/Patricia T. Morris
                                        Law Clerk to Magistrate Judge Binder