UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GARRISON,

        Plaintiff,

v.                                      Case No. 10-13990
                                       Honorable Thomas L. Ludington

EQUIFAX INFORMATION SERVICES, LLC,
and TRANSUNION, LLC,

        Defendants.

_____ /

**OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART REPORT AND RECOMMENDATION AND
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

In this Fair Credit Reporting Act case, Plaintiff Michael Garrison filed a pro se complaint against Defendants Equifax Information Services and TransUnion. The complaint alleges that Defendants violated two provisions of the Act, 15 U.S.C. § 1681j(2) and 1681e(b), by refusing to disclose Plaintiff's credit score to him in a timely manner and not following reasonable procedures to assure the accuracy of the information in the report.

The case was referred to Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b) for general case management. Defendants answered, denying liability. Later, Defendants moved for summary judgment. ECF Nos. 51, 53. On February 13, 2012, Judge Binder issued a report recommending that the Court grant TransUnion's motion and grant in part and deny in part Equifax's motion. ECF No. 58. The same day, the Court received Plaintiff's notice of change of address. On February 15, 2012, a copy of the report and recommendation was mailed to Plaintiff at his new address.

Any party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendations. 28 U.S.C. § 636(b)(1). When a party is served by mailing, as Plaintiff was, three days are added after the period would otherwise expire. Fed. R. Civ. P. 5(b)(2)(C), 6(d). The district court will make a "de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The Court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

On February 27, 2012, Equifax timely filed objections to the report and recommendation. ECF No. 60. Plaintiff filed objections as well, three days late.[1] ECF No. 61. For the reasons that follow, the Court will adopt in part and reject in part the report and recommendation. Equifax's objections will be sustained. Plaintiff's objections will be overruled. And Defendants' motions for summary judgment will be granted.

# I

In the spring of 2010, Plaintiff's application for a Shell credit card was denied. Comp. ¶ 9. "Our credit decision was based," the letter from Shell explained, "on information obtained in a report from the following consumer reporting agency: Equifax Credit Information Service." Equifax's Mot. Summ. J. Ex. A-8, ECF No. 53-9 ("Equifax's Mot.").

A short time later, AT&T also denied Plaintiff's application for credit. "In making our decision," the letter explained, "we received information from the credit bureau listed below. . . . Equifax." *Id*. Ex. A-9.

---

[1] Plaintiff was served on February 15. Because service was by mail, ordinarily the objections would be due seventeen days later. In this case, seventeen days later (March 3, 2012) was a Saturday. Accordingly, under Rule 6(a)(1)(C), the time for responding continued to run until the end of the next business day, Monday, March 5. Plaintiff did not file his objections until March 8.

On July 26, 2010, Plaintiff requested a copy of his credit report from the three national credit reporting agencies: Equifax, TransUnion, and Experian. Compl. ¶ 2.

On July 30, TransUnion wrote to Plaintiff, requesting proof of his current address. *See* TransUnion's Mot. Summ. J. Ex. C-2, ECF No. 51-7 ("TransUnion's Mot."). In pertinent part, TransUnion's letter provided:

> We have received your request for a copy of your TransUnion Credit Report. However, the current mailing address you provided is not listed in our records. In order for TransUnion to process your request and to protect the confidentiality of your credit report, please complete the attached form and submit verification of your current address. Acceptable forms of verification include copies of two (2) of the qualifying documents listed below. . . .
>
> - Drivers License
> - State ID Card
> - Bank or Credit Union Statement
> - Cancelled Check
> - Government Issued ID Card
> - Signed Letter from Homeless Shelter
> - Stamped Post Office Box Receipt
> - Utility Bills (Water, Gas, Electric, or Telephone)

*Id*. Attached to the letter was a "disclosure request form." *Id*. In August, Plaintiff responded. "Dear TransUnion," he wrote:

> Pursuant to your letter dated July 30, 2010, requesting proof of my current mailing address in order to send my credit report, I am hereby enclosing the following documents/and or copies of said documents: Copy of Michigan Drivers license, copy of Tribal Drivers license, copy of my current cable bill from DirecTv, and copy of my Michigan Voters Registration card.

*Id*. Ex. C-3. Plaintiff did not attach the disclosure request form. *Id*.

On September 2, 2010, TransUnion wrote to Plaintiff. With a subject line "Re: Unable to Locate Credit Report," Transunion's letter explained:

> Transunion maintains credit reports on individuals who have existing credit histories. Based on the information you provided, we are unable to locate a credit report for you. If you would like to send additional verified information, we will

> be happy to re-check our records. Acceptable forms of address verification include copies of two of the following documents that show your current address: driver's license, utility bill, bank or credit card statement, cancelled check, signed homeless shelter letter, stamped post office box receipt, government issued ID, state ID card.

TransUnion's Mot. Ex. C-4. TransUnion did not reference the disclosure request form or comment on its absence in Plaintiff's prior correspondence.

Plaintiff did not respond to TransUnion's September 2 letter. He did not send additional verified information. He did not ask TransUnion to re-check its records.

About this time, Plaintiff mailed a certified letter to Equifax. *See* Equifax's Mot. Ex. A-5. Writing on August 17, 2010, Plaintiff first observed that Equifax had not produced the credit report within fifteen days as required by the Act. *Id*. He continued:

> This letter is to inform you that if you do not disclose my credit report as required within 7 business days or by August 24, 2010, that I will be filing an action in the U.S. District Court to request an order of disclosure as well as appropriate damages. Please Respond As Soon As Possible. Thank You.

*Id*. Equifax responded as TransUnion had, explaining that "the information you provided as proof of your identity does not match your information currently on file. Therefore, to protect your information, we must ask for some additional information." Equifax's Mot. Ex. A-6. Specifically, Equifax requested proof of Plaintiff's social security number and current address. *Id*.

Plaintiff alleges that he wrote to Equifax on August 29, 2010, , enclosing copies of his driver's license, social security card, and power bill. *See* Equifax's Mot. Ex. A-7. Equifax, however, asserts that it did not receive the letter.[2]

---

[2] Acknowledging that Plaintiff has produced a copy of the letter during discovery, Equifax maintains that it did not receive the letter until this production. Unlike Plaintiff's August 17 letter, Equifax also notes, the August 29 letter was not sent certified mail.

As of October 2010 began, Plaintiff had not received his credit report from either Equifax or TransUnion. On October 6, Plaintiff filed a two-count complaint against Defendants. Count one alleges that Defendants violated the Fair Credit Reporting Act by "willfully and or negligently refusing to disclose the Plaintiff's credit report to him" and "by not disclosing it to him within 15 days." Compl. 3 (capitalization and emphasis omitted). Count two alleges that Defendants violated the Act by "willfully and or negligently failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in the Plaintiff's credit file." *Id*. (capitalization and emphasis omitted). The case was referred to Judge Binder for general case management.

Following discovery, Defendants each moved for summary judgment. Judge Binder issued a report recommending that the Court grant TransUnion's motion and grant in part and deny in part Equifax's motion. Equifax timely filed objections. Plaintiff filed objections as well, three days late.

## II

Judge Binder's report recommends that the Court grant Equifax summary judgment on count two of the complaint, but not count one. In count one, Plaintiff alleges that Equifax did not disclose Plaintiff's credit score to him in a timely manner, violating the Act.[3]

Plaintiff first requested the report by writing to Equifax on August 17. It responded by requesting proof of address. On August 29, 2010, Plaintiff alleges, he wrote to Equifax again, enclosing proof of his address. Equifax asserts that it did not receive the letter. Summing up the dispute, Judge Binder reports:

---

[3] In pertinent part, 15 U.S.C. § 1681j provides: "A consumer reporting agency shall provide a consumer report . . . not later than 15 days after the date on which the request is received." § 1681j (a)(2).

> [W]e are left with competing declarations — one averring that the letter was properly mailed and the other stating that the letter was not received. Although Defendant Equifax seeks to have this issue resolved in its favor on summary judgment, such a ruling would run counter to the long-held common law presumption that a properly addressed letter placed in the hands of the postal service "creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed."

Report & Recommendation 10, ECF No. 58. (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)). Judge Binder also cautions, however, that the mailbox rule has been limited by the Sixth Circuit. He continues:

> The Sixth Circuit . . . has held that "[t]estimony of non-receipt, standing alone, would be sufficient to rebut the presumption of receipt[.]" *In Re Yoder Company*, 758 F.2d 1114, 1118 (6th Cir. 1985). . . . In other words, when the presumption is rebutted, the presumption itself loses its effect, but that does not mean that the opposite conclusion is proven, as Defendant Equifax would have it. Instead, "testimony of non-receipt is sufficient to rebut the presumption of receipt, thus creating an issue of fact as to whether or not the letters were mailed." *Wielicki v. HMC Group*, No. 1:09-CV-15, 2009 WL 2496642, at *4 (N. D. Ohio Aug. 13, 2009). . . .
>
> I therefore suggest that summary judgment be denied as to Count I against Defendant Equifax.

Report & Recommendation 11.

Equifax objects to Judge Binder's recommendation, asserting that Plaintiff did not present sufficient evidence to invoke the mailbox rule. Specifically, he did not allege "(1) proof of proper address, (2) sufficient postage, and (3) deposit in the mail." Equifax's Objections 6, ECF No. 60. In support, Equifax quotes *Laird v. Norton Healthcare, Inc.*, 442 F. App'x 194 (6th Cir. 2011), in which the court explained:

> As the court held in *Yoder*, for the presumption of receipt to arise under the common law mailbox rule, a party must present evidence that the letter was "properly addressed, had sufficient postage, and was deposited in the mail." 758 F.2d at 1118. There is nothing within Laird's affidavit that states she affixed sufficient postage or, more critically, when she deposited the letter in the mail.

*Laird*, 442 F. App'x at 199. Based on the Sixth Circuit's holding in *Laird*, Equifax's objection will be sustained.

In *Laird*, the plaintiff supported her contention that the mailbox rule should apply with the following affidavit:

> That on or about July 2, 2004 I prepared and typed on my computer a draft letter of appeal regarding my short term disability claims. . . . Later that same day, I retyped the draft letter and added the correct address of [Appellee] Hartford–CEBSCO. . . . This letter was appended to the Complaint as Plaintiff's Exhibit 'B' and was mailed to the address shown thereon.

442 F. App'x at 199. The Sixth Circuit concluded that the plaintiff had not made sufficient allegations to invoke the mailbox rule as "the statements within the affidavit were not sufficient to show that Laird mailed the letter." *Id.* Specifically, "There is nothing within Laird's affidavit that states she affixed sufficient postage or, more critically, when she deposited the letter in the mail." *Id.* Accordingly, the court affirmed the grant of summary judgment to the defendant.

In this case, Plaintiff's supports his contention the mailbox rule should apply with one paragraph in his verified complaint, which provides:

> On August 26, 2010, Defendant Equifax responded by asking for copies of documents proving Plaintiff's identification and address to which the Plaintiff complied On [sic] August 29, 2010, by sending a copy of his state drivers license, electric bill, and social security card.

Compl. ¶ 7; *see also* Pl.'s Resp. Equifax's Mot. 5 ("On August 26, 2010, Defendant Equifax responded by asking the Plaintiff for copies of documents verifying his identity and current address. On August 29, 2010, the Plaintiff fully complied with Equifax's request and mailed a copy of his state drivers license, electric bill, and social security card.").

Plaintiff does not, however, "present evidence that the letter was 'properly addressed, had sufficient postage, and was deposited in the mail.'" *Laird*, 442 F. App'x at 199 (quoting *Yoder*, 758 F.2d at 1118). Consequently, as in *Laird*, Defendant is entitled to summary judgment.

The document purporting to be a copy of the letter that Plaintiff produced during discovery does not alter this result. *See* Equifax's Mot. Ex. A-7. Drawing all reasonable inferences in Plaintiff's favor, the document establishes that Plaintiff knew Equifax's address. It does not establish that the envelope enclosing the letter was properly addressed, that it had sufficient postage, or that it was deposited in the mail.

Because Plaintiff does not establish these three elements, he is not entitled to the mailbox rule's presumption.[4] Equifax's objection will be sustained. It is entitled to judgment on count one. Accordingly, the additional objections raised by Equifax regarding count one are not addressed.

### III

Plaintiff makes three objections to the report and recommendation. Although they were not timely filed, the Court nevertheless addresses their merits. None alter the correctness of Judge Binder's recommendation.

---

[4] In passing the Court notes that although stringent, these three requirements are sound. A plaintiff seeking to satisfy them need only send the letter by certified mail, as Plaintiff himself did with other letters in this case. (Indeed, a plaintiff need not even send the letter certified mail, provided that he presents evidence that the letter was properly addressed, had sufficient postage, and was deposited in the mail.) Although certified mail is slightly more expensive than regular mail, as the claim itself depends in part on receipt of the letter, the marginal expense is actually net-efficient. Were this Court considering the question as a matter of first impression, it might well adopt the rule set forth in *Yoder* and *Laird*. Of course, this is not a matter of first impression. Rather, this Court is required to follow the precedents of the Sixth Circuit, including the rule set forth in *Yoder* and *Laird*.

In passing, the Court also notes that it is not required to follow *Wielicki v. HMC Group*, No. 1:09-CV-15, 2009 WL 2496642 (N. D. Ohio Aug. 13, 2009), an unreported decision of another federal district court. That case, in which the plaintiff signed a declaration that he mailed eleven separate letters requesting his credit report to the defendant, is distinguishable on its facts. Moreover, to the extent that the case's holding is inconsistent with *Yoder* and *Laird*, this Court does not find the holding persuasive

**A**

Plaintiff first objects "To Page 8, At Paragraph 2: stating that the Plaintiff did not send the requisite verifying documents to Defendant Transunion." Pl.'s Objections 1, ECF No. 61. He explains: "In Defendant Transunion's own letter they only requested proof of the Plaintiff's current mailing address at that time not other information such as social security number . . . . The Plaintiff also dispute[s] the fact that Defendant Transunion ever request[ed] any additional information." *Id*. (emphasis omitted).

Drawing all reasonable factual inferences in Plaintiff's favor, he is correct that he sent the verifying documents to Transunion, initially. He is not correct, however, that a genuine issue of fact exists as to whether Transunion then requested additional information. The undisputed evidence shows that Transunion did. Plaintiff did not respond.

On July 26, 2010, Plaintiff requested a copy of credit report from TransUnion. On July 30, TransUnion responded, requesting proof of Plaintiff's current address. *See* TransUnion's Mot. Ex. C-2. In August, Plaintiff responded to TransUnion's July 30 letter. To verify his current address, Plaintiff provided four documents (copies of his Michigan driver's license, tribal driver's license, cable bill, and voter registration card). *Id*. Ex. C-3. Plaintiff did not reference or attach the disclosure request form. *Id*. These omissions, however, went unremarked on by Transunion when it then responded.

On September 2, 2010, TransUnion wrote to Plaintiff. With a subject line "Re: Unable to Locate Credit Report," Transunion's letter explained:

> TransUnion maintains credit reports on individuals who have existing credit histories. Based on the information you provided, we are unable to locate a credit report for you. If you would like to send additional verified information, we will be happy to re-check our records. Acceptable forms of address verification include copies of two of the following documents that show your current address:

driver's license, utility bill, bank or credit card statement, cancelled check, signed homeless shelter letter, stamped post office box receipt, government issued ID, state ID card.

TransUnion's Mot. Ex. C-4. Plaintiff does not dispute receiving this letter. He did not respond. He did not send additional verified information. He did not ask TransUnion to re-check its records.

Thus, Plaintiff is correct that TransUnion's letter of July 23 focused on verifying Plaintiff's current address. But his further argument — that Transunion did not notify Plaintiff that additional information was required to locate his credit report — is contradicted by the undisputed evidence. Plaintiff's argument in his opposition brief does not alter this conclusion. *See* Pl.'s Opp'n TransUnion's Mot. Summ. J. 5, ECF No. 55. "On September 2, 2010," Plaintiff contends in that brief, "Defendant Transunion responded by refusing to disclose the Plaintiff's credit report to him and claimed that it could not be located. Transunion at this time never requested any additional identifying documents or information whatsoever." *Id*. Plaintiff's argument is not only unsupported — it is contradicted by the undisputed evidence. Consequently, as Judge Binder observed:

> Plaintiff's own version of the events confirms that he did not provide sufficient verifying information to Defendant Trans Union. Defendant . . . sent a letter to Plaintiff, dated September 2, 2010, stating it had been unable to locate the credit report and reiterating the requisite verifying documents needed from Plaintiff and included another disclosure request form. Prior to the filing of his complaint, Plaintiff did not send the requisite information to Defendant Trans Union. Plaintiff does not dispute this fact. I therefore suggest that there is no genuine issue of material fact in dispute. The documents Defendant Trans Union required Plaintiff to furnish are expressly identified as reasonable requirements under the applicable regulation. *See* 16 C.F.R. § 614.1(1),(2). I therefore suggest that the undisputed evidence reveals that Defendant Trans Union's requests were reasonable, that Plaintiff failed to comply with the reasonable requests for verifying documents, and that said failure relieved Defendant Trans Union of any statutory duty to disclose Plaintiff's credit report.

Report & Recommendation 8–9 (internal citations omitted).

TransUnion is entitled to judgment on count one of Plaintiff's complaint. Plaintiff's first objection will be overruled.

**B**

Plaintiff next objects "To Page 19, At Paragraph 1 stating that Defendant Transunion resolved the issues and corrected the false information in the Plaintiff's Transunion credit file." Pl.'s Objections 2. Plaintiff continues: "[TransUnion] in fact has still to date not removed all of the false information in the Plaintiff's Transunion credit file." *Id.* (emphasis omitted). Plaintiff's objection does not, however, specify what the false information is, much less produce evidence establishing that the information is inaccurate.

Drawing all reasonable inferences in his favor, Plaintiff appears to be referencing the formal dispute Plaintiff initiated with TransUnion during the pendency of this litigation. Judge Binder reports:

> [A]fter the complaint in this matter was filed and after Defendant TransUnion provided Plaintiff with his credit report, Plaintiff sent Defendant TransUnion a formal dispute alleging several errors in the credit report he received. Defendant Trans Union investigated the alleged errors and found that three of the disputed accounts were removed by the furnishers, one of the disputed accounts was removed per TransUnion's standard operating procedures, two of the disputed accounts were updated at the furnisher's requests (disputed information was verified) and one account was verified as accurate by the furnisher. Defendant TransUnion then reported this updated information to Plaintiff on June 3, 2011.

Report & Recommendation 17 (internal citations and quotation marks omitted). Judge Binder continues:

> As indicated earlier, a "consumer reporting agency receiving a facially credible report from a source which it believes to be reputable is not liable merely because the report contains inaccurate information. However, a consumer reporting agency is not automatically shielded from liability if it accurately reports the information it receives." *Elsady* [*v. Rapid Global Bus. Solutions, Inc.*, No. 09-

> 11659, 2010 WL 742852 (E.D. Mich. Feb. 26, 2010)]. Defendant TransUnion has submitted evidence that it follows reasonable procedures to assure the accuracy of the information provided by its furnishers. However, there is also evidence that out of the seven disputed items, six of them were not verified after investigation. Therefore, there is some evidence that Defendant TransUnion's procedures were not effective. The question presented is whether Defendant Trans Union's "shield" can be pierced under such circumstances. I suggest that it cannot. In *Bryant* [*v. TRW, Inc*., 689 F.2d 72 (6th Cir. 1982)], the Sixth Circuit found that the defendant could not be shielded by its procedures where the defendant was aware of the plaintiff's troubled history with the furnisher and where the defendant and the plaintiff had met and the plaintiff had complained about three or four tentative reports furnished; yet, the defendant's only efforts to assure accuracy were to call the furnishers and reconfirm what turned out to be inaccurate information. *Bryant*, 689 F.2d at 78–79.
>
> In this case, Plaintiff has not alleged any facts or submitted any evidence like that relied upon in *Bryant*. There are no allegations that the instant Plaintiff had any troubled history with any of the furnishers Defendant TransUnion relied upon nor is there any evidence that any such history was communicated to Defendant TransUnion. Instead, the evidence shows that once alerted to a dispute, Defendant TransUnion quickly resolved the issues and corrected the information. I suggest that under these circumstances, Defendant TransUnion's reasonable procedures should be a shield from liability. I therefore suggest that Defendant TransUnion is entitled to summary judgment.

Report & Recommendation 18–19 (internal citations omitted). The final paragraph is the specific paragraph identified in Plaintiff's objection.

Plaintiff argues that TransUnion "in fact has still to date not removed all of the false information in the Plaintiff's Transunion credit file." As noted, he does not explain how the disputed information verified by TransUnion is false, much less produce evidence showing that the information is inaccurate.

Rather, the undisputed evidence establishes that TransUnion followed reasonable procedures to assure the accuracy of the information provided by its furnishers. TransUnion is entitled to judgment on count two of Plaintiff's complaint. Plaintiff's second objection will be overruled.

## C

Finally, Plaintiff generally objects, without identifying any particular provision of the report, "To Recommendations to dismiss any counts in this matter." Pl.'s Objections 2. Plaintiff's objection will be overruled.

"Within 14 days after being served with a copy of the recommended disposition," Federal Rule of Civil Procedure 72 provides, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Local Rule 72 adds: "Objections under Fed. R. Civ. P. 72 must: (A) specify the part of the order, proposed findings, recommendations, or report to which a person objects; and (B) state the basis for the objection." E.D. Mich. L.R. 72(d)(1).

As Equifax cogently observes, the Sixth Circuit holds "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991), *quoted in* Equifax's Resp. to Pl.'s Objections 5, ECF No. 63. The Court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985). Plaintiff's general objection will be overruled.

Moreover, to the extent that Plaintiff's general objection is actually a particular objection, it is equally unpersuasive. Evidently responding to Judge Binder's observation that Plaintiff does not allege "any troubled history with any of the furnishers," Plaintiff writes that he "does in fact have a long troubled history dating back 7 years or more with these Defendants." Pl.'s Objections 2. Plaintiff misconstrues the import of Judge Binder's observation, which refers to a troubled history with furnishers, not consumer reporting agencies. As noted, *Bryant* establishes

that a troubled history with furnishers may be used to pierce the immunity conferred on consumer reporting agencies that implement reasonable procedures to assure the accuracy of the information provided by furnishers. *Bryant*, 689 F.2d at 78–79. Plaintiff's unsubstantiated allegation that he had a troubled history with the two consumer reporting agencies is thus inapposite. His objection will be overruled.

IV

Accordingly, it is **ORDERED** that Judge Binder's report and recommendation (ECF No. 58) is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that Equifax's objections (ECF No. 60) are **SUSTAINED IN PART**.

It is further **ORDERED** that Plaintiff's objections (ECF No. 61) are **OVERRULED**.

It is further **ORDERED** that TransUnion's motion for summary judgment (ECF No. 51) is **GRANTED**.

It is further **ORDERED** that Equifax's motion for summary judgment (ECF No. 53) is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: April 16, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Michael Garrison, at P.O. Box 1441, Midland, MI 48641 by first class U.S. mail on April 16, 2012.

                                              s/Tracy A. Jacobs
                                              TRACY A. JACOBS